UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

YI XIANG, Individually and on Behalf of All
Others Similarly Situated,

                  Plaintiff,

      vs.

INOVALON HOLDINGS, INC. KEITH R.
DUNLEAVY, THOMAS R. KLOSTER,
DENISE K. FLETCHER, ANDRÉ S.
HOFFMANN, LEE D. ROBERTS, WILLIAM J.
TEUBER JR., GOLDMAN SACHS & CO.,
MORGAN STANLEY & CO. LLC, CITIGROUP
GLOBAL MARKETS INC., MERRILL LYNCH,
PIERCE, FENNER & SMITH, INCORPORATED,
and UBS SECURITIES LLC

                  Defendants.

———————————————————————— x

:  Civil Action No.
:  1:16-cv-04923-VM-KNF

:  **ECF Case**
:  **Electronically Filed**

## INOVALON DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF AND CLASS REPRESENTATIVE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
James R. Carroll
Susan L. Saltzstein
   Four Times Square
   New York, New York 10036
   Telephone:  (212) 735-3000
   Facsimile:  (212) 735-2000
     -- and --
   500 Boylston Street
   Boston, Massachusetts 02116
   Telephone:  (617) 573-4800
   Facsimile:  (617) 573-4822

*Counsel for Inovalon Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND .................................................................................3

     1.    *July to October 2017*:  Plaintiff Served
         Document Requests And The Parties Negotiated
         A Production Protocol That Did Not Call For Text Messages ...............................3

     2.    *November 2017 to May 2018:*  Inovalon Defendants Agreed
         To Certain Modifications To The Production Protocol, But Plaintiff
         Never Attempted To Expand The Protocol To Include Text Messages .................6

     3.    *June 2018*:  Plaintiff Deposed Two Former Employees
         And Inquired About Their Use Of Text Messages, Yet Plaintiff
         Never Followed-Up With Inovalon Defendants To Request Text Messages..........6

     4.    *October 2018:*  Plaintiff Deposed Mr. Kloster
         -- Who Testified That He Used Text Messages Only
         For "Logistical" Messages -- And Plaintiff Thereafter
         For The First Time Requested The Production Of Text Messages ........................7

LEGAL STANDARD..............................................................................................9

ARGUMENT ..........................................................................................................9

I.     PLAINTIFF HAS NOT DEMONSTRATED "GOOD CAUSE"
       TO DEVIATE FROM THE PRODUCTION PROTOCOL THAT
       THE PARTIES AGREED TO MORE THAN A YEAR AGO ...........................9

     A.    Plaintiff's Eleventh-Hour Request For Text Messages Is Contrary To The
         Plain Terms Of The Parties' Mutually Agreed-Upon Production Protocol ............9

     B.    Plaintiff's Motion Has Failed To Establish The
         Requisite "Good Cause" To Override The Production Protocol .........................13

         1.    Plaintiff Was Aware That Text Messages Were A
             Common Form Of Communication At The Time Of Negotiating
             The Production Protocol, Yet Did Not Seek Their Production ................13

         2.    Neither Mr. Kloster's Testimony Nor The Additional
             Documents Cited In Plaintiff's Motion Provide The Court Any
             Reason To Suspect That There Exist Responsive Text Messages............14

II.     PLAINTIFF HAS NOT IDENTIFIED ANY "GOOD FAITH"
        BASIS TO BELIEVE THAT ANY CUSTODIAN POSSESSES
        RESPONSIVE TEXT MESSAGES AS REQUIRED BY FED. R. CIV. P. 26 ...............17

III.    PLAINTIFF'S MOTION TO COMPEL INOVALON
        DEFENDANTS TO COLLECT, REVIEW, AND PRODUCE
        RESPONSIVE TEXT MESSAGES (IF ANY) FROM MULTIPLE
        CUSTODIANS IS BURDENSOME AND OTHERWISE IMPROPER .........................20

        A.      Plaintiff's Request For The Production
                Of Text Messages Is Disproportionally Burdensome
                To Inovalon Defendants, Particularly When Considered
                In Light Of The Marginal Utility Of Those Text Messages .................................20

        B.      Plaintiff's Motion Is Otherwise Improper Where Plaintiff Failed
                To Satisfy The Meet And Confer Requirements Of Local Rule 37.1 .................22

IV.     IN ANY EVENT, PLAINTIFF HAS NOT
        DEMONSTRATED THAT THERE EXISTS ANY
        "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER
        AT THIS LATE DATE TO PERMIT THIS ADDITIONAL DISCOVERY ..................23

        CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*Barbara v. MarineMax, Inc.*,
    Civ. A. No. 12-cv-368, 2013 WL 1952308 (E.D.N.Y. May 10, 2013) ............................17

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*,
    138 F. Supp. 3d 352 (S.D.N.Y. 2015)..................................................................................19

*Dorchester Financial Holdings Corp. v. Banco BRJ, S.A.*,
    Civ. A. No. 11-cv-1529, 2014 WL 3747160 (S.D.N.Y. July 3, 2014) ............................22

*Ewald v. Royal Norwegian Embassy*,
    Civ. A. No. 11-cv-2116, 2013 WL 6094600 (D. Minn. Nov. 20, 2013) ..........................19

*Evans v. Calise*,
    Civ. A. No. 92-cv- 8430, 1994 WL 185696 (S.D.N.Y. May 12, 1994) ...........................17

*Freydl v. Meringolo*,
    Civ. A. No. 09-cv-07196, 2011 WL 2566087 (S.D.N.Y. June 16, 2011) ........................19

*Gucci America, Inc. v. Guess?, Inc.*,
    790 F. Supp. 2d 136 (S.D.N.Y. 2011)........................................................................23, 24

*Henson v. Turn, Inc.*,
    Civ. A. No. 15-cv-01497, 2018 WL 5281629 (N.D. Cal. Oct. 22, 2018)........................21

*In re: General Motors LLC*,
    Civ. A. No. 14-md-2543, 2016 WL 2766654 (S.D.N.Y. May 12, 2016) ...................24, 25

*Kassner v. 2nd Avenue Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007)......................................................................................24, 25

*Metropolitan Opera Ass'n Inc. v. Local 100, Hotel Employees & Restaurant Employees
    International Union*,
    212 F.R.D. 178 (S.D.N.Y. 2003) .............................................................................11, 12

*Pinks v. M&T Bank Corp.*,
    Civ. A. No. 13-cv-1730, 2016 WL 1216813 (S.D.N.Y. Mar. 25, 2016) .........10, 11, 13, 14

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*,
    Civ. A. No. 96-cv-7590, 1998 WL 67672 (S.D.N.Y. Feb. 18, 1998).........................22, 23

*Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*,
    Civ. A. No. 14-cv-04394, 2018 WL 1088020 (S.D.N.Y. Feb. 12, 2018)...............9, 20, 22

*Trilegiant Corp. v. Sitel Corp.*,
   275 F.R.D. 428 (S.D.N.Y. 2011) ...................................................................19

*Vaigasi v. Solow Management Corp.*,
   Civ. A. No. 11-cv-5088, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016).............................22

*Walker v. Carter*,
   Civ. A. No. 12-cv-05384, 2015 WL 4510406 (S.D.N.Y. July 24, 2015) ..................17, 18

*Walker v. Carter*,
   Civ. A. No. 12-cv-05384, 2016 WL 6820554 (S.D.N.Y. Feb. 4, 2016)................9, 18, 20

*Widevine Technologies, Inc. v. Verimatrix, Inc.*,
   Civ. A. No. 2-07-cv-321, 2009 WL 4884397 (E.D. Tex. Dec. 10, 2009) ........................11

*Woodburn Construction Co. v. Encon Pacific, LLC*,
   Civ. A. No. 05-cv-5811, 2007 WL 1287845 (W.D. Wash. Apr. 30, 2007).....................11

*Zubulake v. UBS Warburg LLC*,
   217 F.R.D. 309 (S.D.N.Y. 2003) ...................................................................19

## RULES & STATUTES                                                      PAGE(S)

Fed. R. Civ. P. 16..............................................................................................23

Fed. R. Civ. P. 26............................................................................... *passim*

Fed. R. Civ. P. 29................................................................................................4

Fed. R. Civ. P. 37..............................................................................................22

S.D.N.Y. Local Rule 37.1....................................................................................22

Inovalon Defendants[1] respectfully submit this opposition to Lead Plaintiff and Class Representative Roofers Local No. 149 Pension Fund's ("Plaintiff") Motion to Compel Production of Documents (the "Motion" (ECF No. 161), cited as "Mot.").[2]

## PRELIMINARY STATEMENT

On the very last day of fact discovery on October 22, 2018 -- one year after the parties negotiated a detailed document production protocol that did *not* require the search and production of text messages -- Plaintiff faxed a letter to the Court under Local Rule 37.2 seeking to extend fact discovery so that Inovalon Defendants could purportedly correct a "production failure" with respect to text messages that Plaintiff claimed it only "first learned of" four days earlier.  (Pl. Ex. 8.)  Contrary to Plaintiff's statements to the Court, the fact that Inovalon Defendants had not searched for or produced text messages in response to Plaintiff's discovery requests had been known by Plaintiff for more than a year.  In fact, the parties' October 2017 document review protocol -- which was negotiated and agreed to by Plaintiff after an extensive meet and confer process -- specifically listed the "sources" of electronically-stored information that Inovalon Defendants would search and review for responsive materials.  That detailed list did not include text messages.

Although Plaintiff's Motion now acknowledges the existence of that protocol (as it must), it nevertheless provides the Court with no grounds to override that protocol or otherwise assume that any text messages would yield responsive information.  Fact discovery in this case has centered on Plaintiff's allegation that Inovalon Defendants made material misrepresentations

---

[1]    "Inovalon Defendants" refers to Inovalon Holdings, Inc. ("Inovalon" or "the Company"), Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, André S. Hoffmann, Lee D. Roberts, and William J. Teuber Jr. (collectively, "Individual Defendants").

[2]    Filed herewith is the Declaration of James R. Carroll, exhibits to which are cited as "Ex. __"; exhibits to the Declaration of Daniel J. Pfefferbaum (ECF No. 163) are cited as "Pl. Ex. __."

and omissions in the Company's IPO offering documents concerning changes in New York State and City tax laws, and their potential impact on Inovalon's effective tax rate.  Accordingly, Inovalon Defendants have produced hundreds of thousands of pages of e-mails, spreadsheets, tax work papers, financial reports, presentations, and regulatory filings over the course of the last year, and numerous fact witnesses have been deposed on such topics.  *None* of those documents or testimony suggest that anyone discussed substantive matters such as tax laws or Inovalon's effective tax rate calculations over text messages.

That notwithstanding, Plaintiff attempts to justify its untimely request for text messages by selectively quoting from the deposition testimony of a single custodian, Thomas Kloster, who merely stated that he occasionally sent text messages that were "logistical in nature," such as messages "to understand if someone [wa]s in their office."  (Pl. Ex. 7 at 202:19-203:14.)  Tacitly acknowledging the weakness of its position, Plaintiff then resorts to cherry-picking and mischaracterizing six documents concerning the purported impact of New York State and City tax law changes on Inovalon's effective tax rate, and then speculating that some custodians "may have" communicated about those documents via text message.  Such speculation, without any evidentiary support, is hardly enough to justify the belated relief Plaintiff seeks.  And while Plaintiff's Motion focuses on Mr. Kloster's purported text messages, Plaintiff's "proposed order" submitted with its Motion stealthily seeks text messages from the personal cell phones of ***sixteen custodians*** -- the majority of whom are either non-parties and/or former employees of Inovalon, and are never even discussed individually in Plaintiff's Motion. (ECF No. 164 (requiring that Inovalon Defendants produce "text messages from the previously agreed upon custodians").)  This Court should reject such tactics.  For the reasons discussed below, Inovalon Defendants respectfully submit that the Court should deny Plaintiff's baseless

2

attempt to alter its prior agreement and extend fact discovery at this late date.

In particular, Plaintiff's Motion should be denied on multiple, independent bases. *First*, as contemplated by Federal Rules of Civil Procedure 26 and 29, the parties negotiated and agreed upon a detailed production protocol more than a year ago that did *not* include text messages.  Where, as here, Plaintiff has failed to show any good cause to deviate from that agreement, the Court should honor it.  *Second,* Plaintiff's Motion does not otherwise satisfy the requirements of Fed. R. Civ. P. 26.  Among other things, Plaintiff is required to make a *prima facie* showing that its request for text messages is more than simply a fishing expedition, but it has not done so.  Plaintiff has not (and cannot) cite to a single piece of evidence to suggest that any custodian -- much less sixteen of them -- used text messages to discuss changes in New York State or City tax laws or the impact of those changes on the Company's effective tax rate, which are the matters at the center of this case.  *Third,* Plaintiff failed to properly meet and confer with Inovalon Defendants on the issue of text messages prior to filing its Motion.  That failure, alone, justifies denial here.  *Fourth,* where Plaintiff's Motion was filed after discovery ended, Plaintiff must prove that there exists "good cause" to modify the discovery schedule in this action.  No such "good cause" exists here, particularly where there has been no change in circumstances since Plaintiff agreed that text messages would *not* be produced under the parties' production protocol more than a year ago.  Accordingly, the Court should deny Plaintiff's Motion so that discovery in this action may come to a final and efficient conclusion.

## FACTUAL BACKGROUND

1. ***July to October 2017*:  Plaintiff Served Document Requests And The Parties Negotiated A Production Protocol That Did Not Call For Text Messages**

Plaintiff served its First Set of Requests for Production of Documents to Inovalon Defendants on July 18, 2017, and Inovalon Defendants timely served their Responses and

Objections to those Requests on August 17, 2017.[3]  (Pl. Exs. 1, 4.)  Contrary to Plaintiff's

suggestion that Inovalon Defendants' Responses and Objections did not "explicitly object[] to the

production of text messages," those Responses and Objections specifically objected to Plaintiff's

definition of "Communications," including because "it is overbroad [and] unduly burdensome,"

and objected to Plaintiff's "Production of ESI" instructions because they "purport[ed] to impose

obligations beyond those required by the Federal Rules of Civil Procedure and/or the Local Civil

Rules of this Court."  (Mot. at 2; Pl. Ex. 4 at 28-29, 31.)

As Plaintiff's Motion acknowledges, and as contemplated by Fed. R. Civ. P. 29, the

parties thereafter engaged in an "extensive" process to come to an agreement on the "locations,

custodians, and search terms to be used to search for and identify relevant and responsive

electronically stored evidence."  (Mot. at 2.)  On September 29, 2017, Inovalon Defendants sent

Plaintiff a letter attaching their proposed production protocol that "specifie[d] the locations and

time frames to be searched, and categories of documents that would be produced from those

sources."  (Ex. 1 at 1-2.)  That letter also made clear the import of that proposed protocol:  "[w]e

cannot stress enough that the parties must arrive at a consensus . . . regarding the categories of

documents that will be produced before an electronic document review is undertaken."  (*Id.* at l.)

Over the course of the following month, the parties continued to negotiate that protocol.  (*See,

e.g.,* Ex. 2 ("Following up on our call earlier today regarding the sources of electronic discovery

and search terms.  We would propose the following additions . . . .").)

---

[3]      Plaintiff served three sets of requests for production on Inovalon Defendants dated July
18, 2017, April 9, 2018, and May 23, 2018  (collectively, the "Requests").  (Pl. Exs. 1-3.)
Inovalon Defendants responded and objected to those Requests on August 17, 2017, May 3,
2018, and June 22, 2018 (collectively, the "Responses and Objections").  (*Id.* Exs. 4-6.)

On October 16, 2017, Inovalon Defendants sent Plaintiff a revised protocol that was "designed to take our prior discussions into account."  (Ex. 3 (the "Production Protocol").)  That Production Protocol made plain (as had all prior iterations of that document) that Inovalon Defendants would ***not*** undertake a review of any text messages.  Instead, that protocol identified five "sources" that would be searched and reviewed:

> **We will search the following sources for documents created or sent between August 1, 2014 and December 31, 2015:**
>
> - Documents from the designated folder on the share drive for IPO related materials
> - Documents from the Merrill datasite established in connection with the IPO
> - Board minutes and materials presented at meetings of the board of directors or committees thereof (subject to redaction for irrelevant materials)
> - Documents from specified finance and investor relations folders (to be identified)
> - E-mails for to-be proposed custodians subject to search terms

(*Id.* (emphasis in original).)  "**From these sources, subject to all applicable privileges and immunities,**" Inovalon Defendants further agreed to "**produce documents concerning**" a number of substantive topics negotiated with Plaintiff.  (*Id.* (emphasis in original).)  Plaintiff responded to the Production Protocol on October 18, 2017 and, in doing so, acknowledged that Inovalon Defendants had "incorporated the majority of our positions into your discovery plan."  (Ex. 4 at 2.)  Plaintiff did *not* request that text messages be added to the list of sources to be searched.  (*See id.*)  On October 20, 2017, Inovalon Defendants confirmed to Plaintiff that "[i]t appears we have agreement on the items that will be produced from the review of the specified sources of information, as reflected on pages 1-2 of the proposed Production Protocol document sent on October 16," and that "[o]n this basis, we are commencing the review."  (Ex. 5 at 1.)

2. *November 2017 to May 2018:* **Inovalon Defendants Agreed To Certain Modifications To The Production Protocol, But Plaintiff Never Attempted To Expand The Protocol To Include Text Messages**

Consistent with the Production Protocol agreed to by the parties, Inovalon Defendants made rolling productions of responsive documents from November 2017 through May 2018. As Plaintiff's Motion acknowledges, during this period, the parties negotiated certain modifications to the Production Protocol. (Mot. at 10.) For example, in an effort to avoid unnecessary motion practice, Inovalon Defendants agreed to search for and produce e-mails from additional custodians, including Michael Boezer (a former employee), Elizabeth Krapf (an executive assistant at Inovalon), John Davis (a former employee), and Robert Wychulis (the President of Inovalon).[4] (*See id.*) Inovalon Defendants also agreed to search in an earlier time period for materials responsive to Plaintiff's Document Request No. 36, which requested tax alerts that Inovalon Defendants may have received from Deloitte or KPMG. (Pl. Ex. 6 at 2-3.)

Consistent with the Production Protocol -- and as Plaintiff's Motion acknowledges was otherwise plain from the face of the documents produced in this action -- none of Inovalon Defendants' productions included text messages. (*See* Mot. at 2 (noting that it was clear that of Inovalon Defendants' 22,500 produced documents "zero are text messages").) Plaintiff's counsel, however, never asked that the parties modify the Production Protocol to include text messages.

3. *June 2018:* **Plaintiff Deposed Two Former Employees And Inquired About Their Use Of Text Messages, Yet Plaintiff Never Followed-Up With Inovalon Defendants To Request Text Messages**

In June 2018 -- more than three months before the close of fact discovery -- Plaintiff deposed two non-parties, Mason Kotelchuck (Inovalon's former controller) and John Davis (a former staff accountant at Inovalon). Plaintiff's counsel asked each deponent about his use of

---

[4]     Inovalon Defendants agreed to add another custodian, Steven Crawford (a former employee), in July 2018.

text messages while at Inovalon, and each answered that he occasionally used text messages to communicate with coworkers at Inovalon, but made no suggestion that such communications were substantive or related to any subject matters relevant to this action.[5]  Following that testimony, Plaintiff did not request to meet and confer with Inovalon Defendants about any potential production of text messages, and did not otherwise attempt to serve those former Inovalon employees with document subpoenas requesting that they produce such text messages from their personal devices.

      4.    ***October 2018*:  Plaintiff Deposed Mr. Kloster -- Who Testified That He Used Text Messages Only For "Logistical" Messages -- And Plaintiff Thereafter For The First Time Requested The Production Of Text Messages**

On October 18, 2018, Plaintiff deposed Inovalon's former Chief Financial Officer, Thomas Kloster.  During that deposition, Mr. Kloster testified that he occasionally used text messages to communicate with coworkers at Inovalon, and that he "[did not] have a recollection of [it], but it's possible" that he texted individuals at Deloitte or KPMG.  (Pl. Ex. 7 (Kloster Dep. Tr.) at 56:2-23.)  Like Messrs. Kotelchuck and Davis, however, Mr. Kloster made no suggestion that these text messages related to any subject matters relevant to this action.  Instead, in a line of questioning that Plaintiff's Motion tellingly omits to quote in full, Mr. Kloster testified as follows:

---

[5]    (*See* Ex. 6 (Kotelchuck Tr.) at 31:2-10 ("Q. Did you communicate about work matters over text message to your -- with your coworkers? A. To a small degree I guess, as in using discretion, I didn't send the report out, for example, can you send a report out.  But I don't recall, you know, sensitive information via text.  It may have been more through an email."); Ex. 7 (Davis Tr.) at 22:12-22 ("Q. Did you communicate by text message with co-workers at Inovalon while you were performing your work at Inovalon?  A. Occasionally.  Q. And what was the -- the subject of the -- the text?  Was it more personal information or business related?  A. I don't recall.  Q. How often would you say you did communicate by text message with co-workers?  A. Not often.").)  Note that Plaintiff also deposed Daniel Rizzo (Inovalon's Innovation Fellow) and Jonathon Boldt (a Vice President in Finance at Inovalon), in November and December 2017.  During those depositions, however, Plaintiff's counsel did not ask about either individual's use of text messages *at all*, least of all whether they used text messages to discuss subject matters germane to this action.

[Inovalon Defendants' counsel]:  The plaintiff's lawyer ask[ed] you some questions about your using text messaging as an employee at Inovalon.  Do you recall that testimony?

[Mr. Kloster]:  Yes, I do.

[Inovalon Defendants' counsel]:  But you weren't asked how you used the text messaging feature.  Could you please explain how and why you used text messaging while employed at Inovalon.

[Plaintiff's counsel]:  Objection to form.

[Mr. Kloster]:  So we primarily used -- or *I primarily used text messaging as a logistical tool to send a text to understand if somebody is in their office, to understand if they're available, to understand if they can join me in a conference room, to understand if they are free to talk about a particular matter.  Text messaging was not used to discuss business matters of a material nature.*  That would take longer explanation or take a detailed explanation.  Given the nature of a quick typing of a text, it's typically logistical in nature.

(*Id.* at 202:19-203:16 (emphasis added).)  Plaintiff's counsel asked no follow-up questions on what "particular matters" Mr. Kloster may have texted about, but instead inquired whether Mr. Kloster had utilized one of the breaks during the deposition to review the text messages on his phone, and thereafter promptly ended the deposition.  (Ex. 8 (Kloster Tr.) at 206:1-16.)

In the days that followed Mr. Kloster's deposition, Plaintiff's counsel at no point reached out to Inovalon Defendants' counsel to meet and confer about any potential production of text messages.  Instead, Inovalon Defendants only heard of the issue again when Plaintiff's counsel sent its pre-motion letter to the Court on the last day of fact discovery.  (Pl. Ex. 8.)  Although that letter focused solely on the testimony of Mr. Kloster, Plaintiff's instant Motion requests that Inovalon Defendants review and produce text messages from the personal cell phones of the *sixteen* custodians for whom Inovalon Defendants previously agreed to produce responsive e-mails.  (ECF No. 164.)  Those custodians include the six Individual Defendants, five current Inovalon employees (Messrs. Boldt, Rizzo, and Wychulis and Mses. Collins and Krapf), and five

*former* Inovalon employees (Messrs. Boezer, Crawford, Davis, and Kotelchuck, and Ms. Vernal).

## LEGAL STANDARD

Although the "scope of discovery is broad" it is "not limitless." *Walker v. Carter*, Civ. A. No. 12-cv-05384, 2016 WL 6820554, at *4 (S.D.N.Y. Feb. 4, 2016). In particular, Federal Rule of Civil Procedure 26(b)(1) requires that any request for discovery must be addressed to matters that are relevant to the action and "proportional to the needs of the case":

> "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Courts in this District have explained that "[p]roportionality focuses on the marginal utility of the discovery sought" such that "[p]roportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate, and *vice versa*." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, Civ. A. No. 14-cv-04394, 2018 WL 1088020, at *8 (S.D.N.Y. Feb. 12, 2018) (internal quotation marks and citations omitted). Indeed, the Advisory Committee Notes to Rule 26 clarify that the Rule was adopted to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes of 1983 and 2015.

## ARGUMENT

**I.     PLAINTIFF HAS NOT DEMONSTRATED "GOOD CAUSE"
        TO DEVIATE FROM THE PRODUCTION PROTOCOL
        THAT THE PARTIES AGREED TO MORE THAN A YEAR AGO**

### A.     Plaintiff's Eleventh-Hour Request For Text Messages Is Contrary To The Plain Terms Of The Parties' Mutually Agreed-Upon Production Protocol

Plaintiff's Motion -- much like its pre-motion letter -- largely ignores the Production Protocol that the parties entered into in October 2017 and fails to provide the Court with a copy

of it.  (*See* Mot. at 9-11.)  In particular, Plaintiff's Motion strains to minimize the importance of that agreement by suggesting that Inovalon Defendants' request that the parties adhere to the Production Protocol is "absurd."  (*Id.* at 9.)  That is hardly the case:  Federal Rule of Civil Procedure 29(b) provides that "the parties may stipulate . . . procedures governing or limiting discovery be modified."[6]  Indeed, this Court indicated during the telephonic conference that it was "appropriate" and "what the rules contemplate" that the parties negotiated the "disclosure of electronically stored information, and came to a resolution and a written protocol for obtaining electronically stored information" in October 2017, before the parties got "deep into discovery."[7] (Ex. 9 (Conf. Tr.) at 3:22-4:25.)  Unsurprisingly, courts routinely hold parties to their negotiated discovery protocols.

Judge Ellis's decision in *Pinks v. M&T Bank Corp.*, Civ. A. No. 13-cv-1730, 2016 WL 1216813 (S.D.N.Y. Mar. 25, 2016) is particularly instructive on this point.  In *Pinks*, the plaintiff moved to compel the defendant to respond to certain interrogatory requests it had propounded in January 2016.  *Id.* at *2.  Importantly, while the interrogatory requests were technically timely because they were propounded during the time allowed for class discovery, the plaintiff's issuance of the requests was contrary to the parties' voluntary agreement to provide all written

---

[6]     Such discovery plans are also contemplated by Fed. R. Civ. P. 26(f).  Although the Parties' Joint Rule 26(f) Report was filed prior the parties' finalization of the Production Protocol, that report specifically noted that "[t]he parties have discussed issues concerning preservation and discovery of electronically stored information ("ESI") ***and anticipate agreeing to an appropriate*** searchable format and ***production protocol***."  (ECF No. 81 at 3 (emphasis added).)

[7]     Relatedly, Plaintiff argues that Inovalon Defendants are attempting to "weaponize" the Production Protocol or otherwise construe it as "forever waiv[ing] Plaintiff's right to later seek" additional discovery beyond that agreement.  (Mot. at 9-10.)  Plaintiff is mistaken.  Indeed, Plaintiff's Motion acknowledges that Plaintiff and Inovalon Defendants, in an effort to avoid the need for costly motion practice, negotiated at various points to expand the scope of the Production Protocol to add certain custodians or search broader time periods following timely meet and confer sessions.  (*Id.* at 10; *see also supra* at 6.)

discovery by December 2015.  *Id.* at *1.  As a result, the defendant objected to the interrogatories "as being served contrary to the discovery agreement," and the court denied the plaintiff's motion to compel on that same basis.  *Id.* at *2.  In doing so, the court explained that:

> The Parties are best situated to understand the discovery needs of the case.  In the absence of any evidence of bad faith by either Party, the Court upholds the discovery agreement . . . .  Requiring [the defendant] to engage in new searches and production . . . frustrates the Parties' intent to enter into a discovery agreement, and carry out discovery according to their mutually understood needs.  ***To the extent that Parties enter into agreements on the best way to conduct discovery, courts should uphold and honor such agreements***.

*Id.* at *4 (emphasis added).  The court ultimately denied the motion "because Parties should be encouraged to agree in discovery, the information [the plaintiff] seeks is contrary to the Parties' discovery agreement, and [the plaintiff] has not shown *good cause* to override the agreement."  *Id.* at *1 (emphasis added).  Importantly, Judge Ellis's decision in *Pinks* is consistent with decisions from other courts that have also recognized the importance of discovery agreements and rejected motions to compel evidence beyond the scope of those agreements absent good cause.[8]  So, too, this Court should honor the Production Protocol in this action, and reject Plaintiff's attempt to override that agreement without good cause to do so (*see infra*, Section I.B).

Tellingly, Plaintiff's Motion does not cite any cases in which a court considered a discovery protocol in the context of a discovery dispute, but instead cites a <u>single</u>, factually inapposite case -- *Metro. Opera Ass'n Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*,

---

[8]    *See, e.g.*, *Widevine Techs., Inc. v. Verimatrix, Inc.*, Civ. A. No. 2-07-cv-321, 2009 WL 4884397, at *1-2 (E.D. Tex. Dec. 10, 2009) (denying motion to compel seeking e-mails that were beyond the time period provided in the parties' "stipulations regarding their mutual discovery obligations" where the court noted that the rules "encourage agreed-upon, lawyer-managed discovery and to eliminate the cost, effort and expense involved in court intervention in discovery through motion practice," and that courts "will generally uphold stipulations that are entered into between the parties"); *Woodburn Const. Co. v. Encon Pac., LLC*, Civ. A. No. 05-cv-5811, 2007 WL 1287845, at *3 (W.D. Wash. Apr. 30, 2007) (denying the defendant's motion to compel certain e-mails from the plaintiff in part because "the parties agreed to the ESI discovery protocol" and the defendant's requests were "inconsistent with" that protocol).

212 F.R.D. 178 (S.D.N.Y. 2003) -- which Plaintiff nevertheless suggests presents "a similar situation." (Mot. at 10.) In *Metro*, the court considered plaintiff's motion for sanctions resulting from the defendant's "discovery abuses." 212 F.R.D. at 183. During a deposition of the defendant's counsel, she admitted, among other things, that: (i) she never gave "written instructions to anyone at [the defendant] concerning their obligations with respect to document retention or production; (ii) she "never made a search of any files at [the defendant's office]" during fact discovery; and (iii) she never looked for documents which the court described as "obviously-responsive." *Id.* at 213-14. The *Metro* court noted that the counsel's testimony demonstrated that "instead of shouldering the responsibility imposed by the Rules to conduct a good faith search for responsive materials—which would have yielded the obviously-responsive [materials]—defense counsel seeks to impose on [plaintiff's] counsel the burden of identifying with specificity documents in the [defendant]'s files that are responsive and have not been produced," and that the defendant's counsel had it "seriously backwards." *Id.* at 214. Ultimately, the court issued sanctions because of the defendant's "utter and complete disregard for the rules of the truth-seeking process in civil discovery." *Id.* at 181.

Plaintiff's reliance on *Metro* is demonstrably misplaced. In stark contrast to *Metro*, Inovalon Defendants diligently negotiated a Production Protocol as contemplated by Fed. R. Civ. P. 26 and 29, modified the scope of the Production Protocol at various times after engaging in extensive meet and confer processes with Plaintiff, produced hundreds of thousands of responsive documents pursuant to that Production Protocol, and now respectfully request that the Court honor that agreement between the parties. Inovalon Defendants' actions are in no way indicative of a "complete disregard for the rules" (as in *Metro*) but instead are -- to borrow the words of this Court -- "what the rules contemplate." (Ex. 9 (Conf. Tr.) at 3:22-4:25.)

**B.**     **Plaintiff's Motion Has Failed To Establish The**
        **Requisite "Good Cause" To Override The Production Protocol**

As was the case in *Pinks*, Plaintiff's Motion fails to identify any "good cause" to override

the Production Protocol -- which explicitly did not provide for the production of text messages.

As a result, the Court should honor that agreement as written.

**1.**     **Plaintiff Was Aware That Text Messages Were A**
        **Common Form Of Communication At The Time Of Negotiating**
        **The Production Protocol, Yet Did Not Seek Their Production**

In the first instance, Plaintiff cannot argue that now there exists "good cause" to modify

the Production Protocol to require the production of text messages, where Plaintiff could have

sought such messages when negotiating the Production Protocol in October 2017.  Indeed,

during the telephonic conference on this matter the Court asked Plaintiff's counsel *five* times

"[w]hen you negotiated in October 2017, a protocol for obtaining or searching, among other

things, e-mail messages, weren't you aware that text messaging is a commonly used method for

communication, just like e-mail messages are?"  (Ex. 9 (Conf. Tr.) at 7:12-16; *see also id.* at

7:24-25, 8:4-5, 8:10-11, 8:14-19.)  Although Plaintiff's counsel never squarely answered the

question during the telephonic conference, *id.*, its Motion now provides Plaintiff's answer:  "it is

**common knowledge** that ESI is contained on cell phones."  (Mot. at 4 (internal quotation marks

omitted) (emphasis added).)  Despite that awareness, Plaintiff nonetheless decided to agree to a

Production Protocol that would not provide for the production of such messages.[9]  Plaintiff

---

[9]     Plaintiff may attempt to argue on reply -- as it did on the telephone conference -- that
Plaintiff could not have requested text messages at the time of negotiating the Production
Protocol because it did not "have inside knowledge of what goes on in the company, [and was]
not in a position to know that text message was a commonly used form of communication
between the top executives."  (Ex. 9 (Conf. Tr.) at 9:23-10:3.)  For the reasons the Court
indicated on the telephonic conference, this argument fails.  (*Id.* at 10:4-18 ("Well, you don't
know unless you're working in the corporate entity what methods of communication are
employed.  And that's true in any situation where there is litigation and there might be

should not be entitled to "frustrate[] the Parties' intent to enter into a discovery agreement, and carry out discovery according to their mutually understood needs" by belatedly requesting that Inovalon Defendants search a particular source of electronically-stored information when Plaintiff was in a position to request that review at the time of negotiating the Production Protocol a year ago. *See Pinks*, 2016 WL 1216813, at *4.

> **2. Neither Mr. Kloster's Testimony Nor The Additional Documents Cited In Plaintiff's Motion Provide The Court Any Reason To Suspect That There Exist Responsive Text Messages**

Plaintiff has failed to establish good cause for the additional and independent reason that it has not (and cannot) point to any evidentiary support to bolster its pure speculation that "relevant and responsive text messages are likely to exist on the cell phones of the [sixteen] custodians" concerning New York tax laws or Inovalon's effective tax rate calculations. (*Contra* Mot. at 5.) In particular, the testimony of Mr. Kloster and the six documents cited in Plaintiff's Motion fail to support Plaintiff's speculation for at least three reasons:

*First, Mr. Kloster's testimony suggests only that he used text messages for "logistical" purposes, and provides no indication that he would have any responsive text messages.* Notwithstanding Mr. Kloster's clear testimony that he used text messages as a "logistical tool," Plaintiff's Motion makes much of Mr. Kloster's testimony that he might have texted employees to see if they were "free to talk about a particular matter." (Mot. at 8.) Plaintiff's suggestion that those "particular matters" may include tax-related matters germane to this action is nothing more than speculation. In any event, and as this Court noted during the conference, Plaintiff's counsel was welcome to -- but chose not to -- ask Mr. Kloster follow-up questions designed to illicit examples of the "particular matters" that he may have texted about. (*See* Ex. 9 (Conf. Tr.) at

---

electronically stored information. But one needs to anticipate and try to address what might be in existence that might be relevant and discoverable.").)

17:15-20 ("I'm asking about the text messaging and the particular subjects that you say there was testimony that text messages are about particular subjects.  Was there probing about whether these particular subjects are the tax related information that's at the heart of this action?"); *see also* Ex. 8 (Kloster Tr.) at 206:1-16.)

**Second, Plaintiff's speculation that Inovalon Defendants "may have" responded to certain e-mails via text messages is insufficient to suggest there exists any "good cause" to compel the collection and production of text messages.**  In particular, Plaintiff's Motion suggests that the "production of text messages . . . will supplement an incomplete documentary record in this matter" chiefly because there have been some e-mails produced in this action for which there was no responsive e-mail, and third parties have produced certain *internal* documents which have not been located in Inovalon's files.  (Mot. at 6-7.)  Plaintiff's suggestion that custodians "may have" used text messages to respond to e-mails regarding substantive tax matters reflects only speculation on Plaintiff's part, and in any event defies common sense.  The more reasonable inference is that the e-mail recipient simply did not to reply to the e-mail.  Likewise, Plaintiff's suggestion that third parties might have somehow communicated their *internal* documents to Inovalon via text message is also speculative and strains credulity.[10]  The

---

[10]     For example, Plaintiff cites an April 2014 KPMG PowerPoint presentation that was exchanged *internally* at KPMG that "Plaintiff only obtained . . . through a subpoena to KPMG." (Mot. at 6 (citing Pl. Exs. 9 & 10).)  In the first instance, Plaintiff's suggestion that this PowerPoint presentation may exist in certain custodians' text messages is misplaced as it is well known that PowerPoint presentations cannot be transmitted via text message.  Moreover, Plaintiff's remark that this April 2014 presentation was only produced by KPMG is hardly surprisingly where (i) the e-mail to which the presentation was attached was only sent to KPMG employees, and (ii) in any event, the Production Protocol provided that Inovalon Defendants would commence their e-mail review in August 2014 (*i.e.*, many months after this presentation is dated).  Plaintiff's Motion likewise fails to suggest that any responsive text messages exist around the Deloitte client alerts, including because: (i) Plaintiff never asked Deloitte (or any witness) whether Deloitte sent client alerts via text message, such that Plaintiff has no basis to

more reasonable inference is that these third parties may not have sent certain documents to Inovalon.  Moreover, Plaintiff has never asked a single witness in a deposition about the potential existence of text messages concerning any of the documents that Plaintiff cites in its Motion.  Accordingly, Plaintiff has no basis to suggest that (i) there are any "potential missing communications" about these documents or (ii) that any such "missing communications" "may have occurred over text messages."  (Mot. at 7.)  Indeed, Plaintiff declined to depose many of the custodians who Plaintiff now speculates sent responsive text messages in this action -- including, for example, Dr. Dunleavy, who Plaintiff's Motion twice suggests might have responsive text messages on two purportedly "signfican[t]" and "importan[t]" events.  (*Id.* (*citing* Pl. Exs. 16-18).)  As a result, Plaintiff has no basis to conclude that "relevant and responsive text messages are likely to exist" around any of the documents its Motion cites.  (*Id.*)

> ***Third, Plaintiff's Motion requests that Inovalon Defendants produce text messages for <u>sixteen</u> custodians, yet does not attempt to provide any documentary support or other good cause for Plaintiff's belief that these custodians may have responsive text messages.***  Plaintiff's Motion fails to even list most of the sixteen custodians by name, let alone attempt to offer the Court any basis to believe that such custodians would have responsive text messages on their personal cell phones.  For example, Plaintiff even seeks the text messages of Ms. Krapf, Dr. Dunleavy's executive assistant.  There is no reason to believe based upon anything in Plaintiff's

---

believe that text messages would contain the "sending or receiving [of such] alert[s]"; and (ii) notwithstanding Plaintiff's statement that Deloitte "testified that the January 2015 alert was sent to Inovalon" and that Jonathon Boldt "testified that Inovalon was aware of the NYC tax law change as of January 23, 2015" neither Deloitte nor Jonathon Boldt testified as much (*contra* Mot. at 6 (citing Exs. 11-15); *see* Ex. 10 (Nevin Tr.) at 186:3-11 (testifying that he "do[es] not know in fact" "whether or not Inovalon received that New York City tax alert"); *id.* Ex. 11 (Boldt Tr.) at 143:6-18) (testifying that "there was a question as to when the company became aware of pending New York City tax reform changes.  The question stated on a specific date, I believe it was January 25th.  I can't give you an exact date.  But the company was aware during Q-1.")).

Motion that Ms. Krapf would have had discussions regarding tax law changes and effective tax calculations at all, much less over text message.

Where Plaintiff's Motion fails to identify any good cause to override the Production Protocol at this late stage, the Court should honor that agreement as written.

## II.   PLAINTIFF HAS NOT IDENTIFIED ANY "GOOD FAITH" BASIS TO BELIEVE THAT ANY CUSTODIAN POSSESSES RESPONSIVE TEXT MESSAGES AS REQUIRED BY FED. R. CIV. P. 26

Plaintiff's eleventh-hour request for text messages is also improper under Fed. R. Civ. P. 26 because Plaintiff has failed to demonstrate any "good faith" basis to believe that the collection and search of text messages is anything other than a fishing expedition.  On a motion to compel "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."  *Barbara v. MarineMax, Inc.*, Civ. A. No. 12-cv-368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (*citing Evans v. Calise*, Civ. A. No. 92-cv-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)).  This Court previously expressed that it was "struggling with why there is in the plaintiffs' view a good faith bas[is] for mining these text messages from various employees of the defendants" (Ex. 9 (Conf. Tr.) at 18:8-13).  Yet, even with that admonishment, Plaintiff's Motion does nothing to establish such a good faith basis.

As is evident in the cases cited in Plaintiff's Motion, courts considering motions to compel text messages require the moving party to have some good faith basis to suspect that a collection of text messages would yield responsive information.  For example, Plaintiff's Motion relies on *Walker v. Carter*, Civ. A. No. 12-cv-05384, 2015 WL 4510406 (S.D.N.Y. July 24, 2015), a case that provides an adept example of this requirement.  (*See* Mot. at 4.)  In *Walker*, the plaintiff moved for Judge Ellis to recuse himself because of the "inconsistent" rulings in which Judge Ellis compelled the plaintiff to produce text messages, but did not compel a particular defendant to produce text messages.  *Walker*, 2015 WL 4510406, at *1.  In re-addressing those

rulings, Judge Ellis reiterated that "discovery is not an equation and that ***searches require good faith bases***; Defendants had demonstrated a basis for a search of [the plaintiff]'s phone while [the plaintiff] had not demonstrated a basis for searching [a defendant]'s phone." *Id.* at *2 (emphasis added). In particular, in moving to compel text messages from the plaintiff and certain of the plaintiff's third-party witnesses, the defendants relied on deposition testimony from certain third-party witnesses which confirmed that the plaintiff texted the witnesses prior to their depositions in an effort to influence their testimony. *Id.* at *1.[11] On that evidence, the court granted the defendants' motion to compel. Following that order, the plaintiff asked for a reciprocal order compelling a defendant to produce text messages. *Id.* at *2. Judge Ellis allowed the plaintiff to file such a motion to compel, but specifically "informed [the plaintiff] that if he had anything suggesting that relevant evidence was on [the defendant]'s phone, he should provide it." *Id.* As a result, when moving to compel, the plaintiff provided evidence that the defendant texted with another plaintiff in an unrelated litigation about "business matters" and otherwise had admitted to using text messages to communicate with the President of the United States. 2016 WL 6820554, at *4 (S.D.N.Y. Feb. 4, 2016); *Walker v. Carte*r, Civ. A. No. 12-cv-05384, Dkt. No. 261. Judge Ellis found such evidence to be insufficient to compel the production of text messages, and Judge Carter later agreed, noting that the "[p]laintiff provided little evidence to show that the searches would even return relevant information," such that "[w]eighing the breadth and burden of the requested searches against their likely benefit, it was appropriate to deny" the motion. *Id.* at *4.

---

[11]     Indeed, the defendants attached to their motion to compel exemplar text messages that the plaintiff had sent to other third-party witnesses in which the plaintiff "both recounted his version of the events in dispute and sought to influence their testimony." *Walker v. Carte*r, Civ. A. No. 12-cv-05384, Dkt. No. 197 at 2 & Exhibit C-E (attaching text messages the plaintiff sent to third-party witnesses prior to the witnesses' depositions stating "I know it[s] hard [and a] long time ago but try to remember . . ." and repeatedly informing the witness of plaintiff's position in the case).

The other cases cited in Plaintiff's Motion likewise granted motions to compel only where the moving party had a good faith basis for their belief that text messages would contain responsive information.  *See, e.g.*, *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 386-87 (S.D.N.Y. 2015) (considering defendants' non-production of text messages in the context of the plaintiff's spoliation motion; plaintiff initially sought text messages days after one defendant posted a Facebook post referencing a newspaper article about the case, and in the Facebook post the defendant noted that he "ha[d] the text still [from a co-defendant]" with the co-defendant's "explanation" regarding certain events discussed in the newspaper article); *Ewald v. Royal Norwegian Embassy*, Civ. A. No. 11-cv-2116, 2013 WL 6094600, at *9 (D. Minn. Nov. 20, 2013) (granting motion to compel text messages after the plaintiff demonstrated that "relevant [text] messages exist[ed]," including because the defendant produced an e-mail in the case where a key custodian e-mailed another key custodian "[s]orry for my text 'blast.' . . . I [was] text[ing] while driving home.  Sorry . . . . I apologize [for] the text in the heat of the moment!  In the future, I think I'll stick to e-mails!").[12]

Importantly, in each of *Walker*, *Congregation*, and *Ewald*, the courts only compelled the

---

[12]     The remaining cases cited in Plaintiff's Motion did not concern motions to compel text messages, and are inapposite to the present case for that and other reasons.  *See, e.g.*, *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 435-36 (S.D.N.Y. 2011) (granting the plaintiff's motion to compel certain e-mails and spreadsheets relevant to damages or otherwise "highly relevant" to the plaintiff's claims, but denying the motion in other respects, including because "[m]ere speculation as to the existence of additional documents is insufficient to warrant an order to compel"); *Freydl v. Meringolo*, Civ. A. No. 09-cv-07196, 2011 WL 2566087, at *4 (S.D.N.Y. June 16, 2011) (Fox, M.J.) (granting the plaintiff's motion to compel after the defendant refused to "answer[] any interrogatory or produc[e] any document" which the court held "amount[ed] to a blanket refusal to participate in discovery and is 'a paradigm of discovery abuse'"); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 313 (S.D.N.Y. 2003) (granting the plaintiff's motion to compel the defendant to produce e-mails from the company's back-up tapes, including because the plaintiff "knew that there were additional responsive e-mails that [the defendant] had failed to produce because she herself had produced approximately 450 pages of e-mail[s]" copying the defendant, where the defendant had only produce 100 pages of those e-mails).

production of text messages after the moving parties presented specific "evidence" demonstrating their good faith bases to suspect that a collection of text messages "would even return relevant information."  *See, e.g.*, *Walker*, 2016 WL 6820554, at *4.  Such evidence included already-produced text messages, public Facebook posts, or produced e-mails that specifically confirmed that the non-moving party was using text messages to communicate about the subject matter of the case.  No such comparable evidence exists here, and Plaintiff's Motion cites to none.  As previously discussed in Section I.B.2 above, Plaintiff's citation to the testimony of Mr. Kloster and the six documents cited in its Motion provide nothing to bolster Plaintiff's speculation that "relevant and responsive text messages are likely to exist on the cell phones of the [sixteen] custodians" concerning New York tax laws or Inovalon's effective tax rate calculations.  (*See supra* at 14-17.)  Plaintiff has not (and cannot) point to any "evidence" demonstrating its entitlement to such text message discovery, thus Plaintiff's Motion should be denied.

## III.   PLAINTIFF'S MOTION TO COMPEL INOVALON DEFENDANTS TO COLLECT, REVIEW, AND PRODUCE RESPONSIVE TEXT MESSAGES (IF ANY) FROM MULTIPLE CUSTODIANS IS BURDENSOME AND OTHERWISE IMPROPER

### A.   Plaintiff's Request For The Production Of Text Messages Is Disproportionally Burdensome To Inovalon Defendants, Particularly When Considered In Light Of The Marginal Utility Of Those Text Messages

As demonstrated *supra*, Plaintiff's Motion fails to demonstrate that requiring the Inovalon Defendants to collect and review text messages would yield responsive information, such that the proportionality analysis must begin with an understanding of the "marginal utility of the discovery sought."  *Royal Park*, 2018 WL 1088020, at *8 (denying motion to compel because "[e]ven if there were some possibility of relevance, however, the marginal utility of discovery . . . would be low at best").

As demonstrated in the "Discovery Services Proposal" from Consilio -- the third-party

document collection vender that Inovalon Defendants have engaged in this action -- the monetary costs associated with collecting text messages is estimated to be $1,600 per custodian, exclusive of Consilio's travel expenses.  (Ex. 12 at 3.)[13]  That figure is also exclusive of the cost of Inovalon Defendants' counsel, who are required to (i) travel to and be present at the data collection as required by Consilio (*id.* at 3), and (ii) review the text messages collected from such devices.  (*Id.*)  Beyond the monetary burden, this process is additionally burdensome and intrusive in at least the following ways:

- Requiring, as Plaintiff requests, that Inovalon Defendants collect text messages from the "previously agreed upon custodians" would require that Consilio provide *on-site* data collections from multiple locations (*i.e.*, at Inovalon and otherwise on location for the remaining custodians who do not work at Inovalon).

- One of the proposed custodians lives in Switzerland, which adds unique costs, Swiss legal considerations, and regulatory burdens on collection.[14]

- Custodians would have to make themselves available to attend the collection, share their personal passwords with Consilio, and be without their personal cell phones for a number of hours during the work week.

- Imaging and searching a personal cell phone is particularly intrusive.  Among other things, Consilio would have to copy the entirety of the phone's contents in order to collect text messages, including personal photographs and videos, internet history, notes, music, and text messages with friends and family members.  *See, e.g.*, *Henson v. Turn, Inc.*, Civ. A. No. 15-cv-01497, 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) (noting that "privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices," and denying motion to compel forensic images of the plaintiffs' mobile devices on that basis (collecting cases)).

- Ten of the sixteen custodians for whom Plaintiff seeks text messages are non-party witnesses in the action, including five witness who are not even currently employed

---

[13]   Plaintiff's Motion also attaches a similar quote from a separate document vendor.  (Pl. Ex. 19.)  That quote similarly provides a range of $1,040 to $1,315 per custodian (assuming that the vendor images each custodian's phone and collects data from cloud back-up systems).

[14]   Should the Court grant Plaintiff's Motion, Inovalon Defendants would respectfully request leave to further brief the Court regarding the unique Swiss privacy law issues that would need to be contemplated before requiring production from this particular custodian.

by Inovalon.  (*See supra* at 8-9.)  Moreover, where Inovalon does not issue cell phones to its employees, Plaintiff's Motion -- in effect -- requests that Inovalon Defendants produce the *personal* text messages from these non-parties' *personal* devices (including personal devices of *former* employees).

As the above makes plain, such burdens -- both monetary, privacy-related, and otherwise -- vastly outweigh the  "marginal utility of the discovery sought" by Plaintiff's Motion.  *See Royal Park*, 2018 WL 1088020, at *8.

### B.    Plaintiff's Motion Is Otherwise Improper Where Plaintiff Failed To Satisfy The Meet And Confer Requirements Of Local Rule 37.1

Plaintiff's Motion could be denied for the independent reason that Plaintiff has not satisfied the meet and confer requirement under Fed. R. Civ. P. 37(a)(1) or this Court's Local Rule 37.1.  In particular, Rule 37 requires that Plaintiff certify that it "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  Courts in this District routinely note that a "[p]laintiff's failure to meet and confer with defense counsel in good faith is sufficient reason *by itself* to deny plaintiff's motion to compel."  *Vaigasi v. Solow Mgmt. Corp.*, Civ. A. No. 11-cv-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (emphasis added).[15]

The *only* time that Plaintiff requested that Inovalon Defendants produce text messages was during the deposition of Mr. Kloster on October 18, 2018, when Mr. Pfefferbaum asked that Inovalon Defendants "search for, collect, and produce relevant and responsive text messages

---

[15]     *See also Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A.*, Civ. A. No. 11-cv-1529, 2014 WL 3747160, at *5 (S.D.N.Y. July 3, 2014) (Fox, M.J.) (denying motion to compel, including because of "plaintiff's failure to certify that, in good faith, it conferred or attempted to confer with the defendant in an effort to obtain disclosure or discovery without court action"); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, Civ. A. No. 96-cv-7590, 1998 WL 67672, at *4 (S.D.N.Y. Feb. 18, 1998) (denying motion to compel for failure to meet and confer; court found that "conversations during depositions" do not satisfy Rule 37 where the parties did not "specifically discuss" the "items [plaintiff] seeks to have compelled, let alone shown that any negotiations that occurred were a good faith effort to resolve the dispute without court action").

from Mr. Kloster and the other custodians."  (Pl. Ex. 7 at 58:18-22.)  That statement during the

deposition does not satisfy Plaintiff's obligations under Rule 37, particularly where Plaintiff

made no mention that it would seek court intervention on the topic or otherwise attempt in good

faith to narrow the issues prior to such intervention.  *See Prescient Partners,* 1998 WL 67672, at

*4.  Plaintiff did not otherwise raise the issue before filing its pre-motion letter four days later.

Plaintiff's Motion all but acknowledges that Plaintiff failed to meet Rule 37's requirement.

Indeed, the Pfefferbaum Declaration states that "[p]ursuant to Federal Rule of Civil Procedure

37(a), I hereby certify that the parties met and conferred regarding each of Plaintiff's *three sets of*

*requests for production of documents*" and lists the dates of those meet and confers as being held

between August 24, 2017 and July 31, 2018.  (Pfefferbaum Decl. ¶ 2 (emphasis added).)  That

certification is misleading and otherwise inadequate where the issue of text messages was not

"specifically discussed" during those meet and confer sessions.  *See Prescient Partners,* 1998

WL 67672, at *4.  As a result, Plaintiff's Motion can -- and should -- be denied on the

independent ground that Plaintiff failed to satisfy the requirements of Rule 37.

## IV.   IN ANY EVENT, PLAINTIFF HAS NOT DEMONSTRATED THAT THERE EXISTS ANY "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER AT THIS LATE DATE TO PERMIT THIS ADDITIONAL DISCOVERY

Additionally, Plaintiff's Motion could be denied for the independent reason that Plaintiff's

pre-motion letter was filed on the last day of fact discovery and Plaintiff has not demonstrated

the requisite "good cause" to re-open discovery to accommodate its belated request for text

messages.  As Plaintiff's Motion acknowledges, "a party seeking to file a motion to compel after

discovery has closed must . . . establish good cause" under Fed. R. Civ. P. 16(b)(4).  *Gucci Am.,*

*Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011); *see also* Fed. R. Civ. P. 16(b)(4)

("A schedule may be modified only for good cause and with the judge's consent.").

In particular, the Second Circuit has held that in determining whether a party has "good cause" under Rule 16(b)(4) "the primary consideration is whether the moving party can demonstrate diligence," but that courts "also may consider other relevant factors including, in particular, whether allowing the [modification] will prejudice [the party opposing modification]." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Courts in this District routinely deny motions to compel where the moving party, as here, unnecessarily waited until the eleventh hour to raise a discovery issue and seeks to extend the discovery schedule on that basis.[16] Plaintiff's Motion does not establish any "good cause" to extend fact discovery here:

*Plaintiff cannot demonstrate that it was "diligent" in pursuing its Motion, particularly since it has known since the outset of discovery that Inovalon Defendants were not producing text messages.* As discussed *supra*, Plaintiff has been aware since October 2017 that Inovalon Defendants were not producing text messages, and was able since that time to discuss the topic with Inovalon Defendants or otherwise bring its Motion to the Court's attention. Plaintiff's failure to take either of those "fairly minimal and obvious steps of following up" prior to the close of fact discovery "falls far short of the diligence needed to satisfy" Rule 16. *See Gen. Motors*, 2016 WL 2766654 at *2. Moreover, the Court need not credit Plaintiff's suggestion that

---

[16]    *See, e.g., In re: Gen. Motors LLC*, Civ. A. No. 14-md-2543, 2016 WL 2766654, at *2 (S.D.N.Y. May 12, 2016) (denying defendants' post-discovery motion to compel Verizon to produce the plaintiff's cell phone records, including because "Plaintiff had previously identified Verizon as her cellphone service provider," and Verizon's non-production of any records "should immediately have raised a red flag" for defendants, and that defendants' failure to take "fairly minimal and obvious steps of following up with Verizon" prior to the close of fact discovery "falls far short of the diligence needed to satisfy" Rule 16); *Gucci*, 790 F. Supp. 2d at 140-41 (finding plaintiff's post-discovery motion to compel documents related to the defendant's foreign purchasers to be untimely, including because the "[d]efendants' production of financial information throughout [discovery] . . . related only to sales to domestic customers" and the plaintiff did not "t[ake] issue with those productions, though [plaintiff] was plainly on notice as to Defendants' position on foreign sales information").

it first "learned of the use of text messages" during Mr. Kloster's deposition on October 18, 2018. (Mot. at 11.)  As Inovalon Defendants noted in their pre-motion response letter to the Court (which Plaintiff's Motion tellingly fails to address), Plaintiff learned in June 2018 that Messrs. Kotelchuck and Davis occasionally used text messages to communicate with coworkers at Inovalon.  (*See supra* at 7.)  If Plaintiff was diligent, it would have raised the issue at that time.

**Plaintiff's Motion mistakenly argues that Plaintiff will be prejudiced if the extension is not allowed -- which it will not -- but that is not a consideration of the "good cause" analysis.** Instead, Second Circuit precedent makes clear that the proper prejudice analysis under Rule 16 considers whether the *non-moving* party -- here, the Inovalon Defendants -- would be prejudiced if the extension *is* allowed.  *See, e.g.*, *Kassner*, 496 F.3d at 244.  Although a finding of prejudice is not required, *Gen. Motors*, 2016 WL 2766654 at *2, it is plainly present here: consistent with the scheduling order, the parties have already exchanged expert reports and are to prepare for and hold eight depositions of the parties' experts by December 21, 2018.  (ECF 142.)  Among other things, the act of requiring Inovalon Defendants' counsel to collect and review text messages from Plaintiff's requested custodians would unnecessarily distract Inovalon Defendants from otherwise preparing to close expert discovery.  The Court should not reward Plaintiff's lack of diligence in this way, and can deny Plaintiff's Motion on this independent basis.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff's Motion should be denied.

Dated:  November 28, 2018
      Boston, Massachusetts

Respectfully submitted,

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:   /s/ James R. Carroll
      James R. Carroll (james.carroll@skadden.com)
      Susan L. Saltzstein (susan.saltzstein@skadden.com)
      Four Times Square
      New York, New York 10036
      Telephone:  (212) 735-3000
      Facsimile:  (212) 735-2000
         -- and --
      500 Boylston Street
      Boston, Massachusetts 02116
      Telephone:  (617) 573-4800
      Facsimile:  (617) 573-4822

*Counsel for Defendants Inovalon Holdings, Inc., Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, André S. Hoffmann, Lee D. Roberts, and William J. Teuber Jr.*

26