UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

YI XIANG, Individually and on Behalf of All   :   Civil Action No. 1:16-cv-04923-VM-KNF
Others Similarly Situated,                      :   **(Consolidated)**
                                                :
                        Plaintiff,              :   <u>CLASS ACTION</u>
                                                :
        vs.                                     :   STIPULATION OF SETTLEMENT
                                                :
INOVALON HOLDINGS, INC., KEITH R.               :
DUNLEAVY, THOMAS R. KLOSTER,                     :
DENISE K. FLETCHER, ANDRÉ S.                     :
HOFFMANN, LEE D. ROBERTS, WILLIAM               :
J. TEUBER JR., GOLDMAN SACHS & CO.,             :
MORGAN STANLEY & CO. LLC,                        :
CITIGROUP GLOBAL MARKETS INC.,                  :
MERRILL LYNCH, PIERCE, FENNER &                 :
SMITH, INCORPORATED and UBS                      :
SECURITIES LLC,                                  :
                                                :
                        Defendants.             :
                                                :
———————————————————— x

This Stipulation of Settlement, dated February 19, 2019 (the "Stipulation"), is made and entered into by and among: (i) Lead Plaintiff Roofers Local No. 149 Pension Fund ("Roofers Local") (on behalf of itself and each Class Member), by and through its counsel of record in the Litigation; and (ii) Inovalon Holdings, Inc. ("Inovalon" or the "Company"), Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, André S. Hoffmann, Lee D. Roberts and William J. Teuber, Jr. (the "Individual Defendants," and with Inovalon, the "Inovalon Defendants"), and Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated and UBS Securities LLC (the "Underwriter Defendants") (collectively, "Defendants"), by and through their counsel of record in the Litigation.[1]   The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.    THE LITIGATION

The Litigation is currently pending before the Honorable Victor Marrero in the United States District Court for the Southern District of New York (the "Court").  The initial complaint in this action was filed on June 24, 2016.  On September 20, 2016, the Court appointed Lead Plaintiff and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel.

Lead Plaintiff's Consolidated Complaint for Violations of the Securities Act of 1933 (the "Complaint") filed on December 22, 2016, alleges that Defendants violated §§11, 12(a)(2) and 15 of the Securities Act of 1933 by issuing materially false and misleading statements and omitting material information in the Registration Statement filed in connection with Inovalon's initial public offering ("IPO") of common stock on or about February 12, 2015.  Defendants deny each and all of

---

[1]     All capitalized terms not otherwise defined shall have the meanings ascribed to them in §IV.1 herein.

- 1 -

Lead Plaintiff's allegations.  Defendants contend that they did not make any false or misleading statements and that they disclosed all information required to be disclosed by the federal securities laws.

In accordance with the Court's Individual Rules of Practice, following the exchange of letters between counsel to Lead Plaintiff and Defendants, on March 3, 2017, Defendants requested that the Court convene a conference or authorize the filing of a motion to dismiss by Defendants.  On May 23, 2017, the Court issued an order construing the prior correspondence as a motion to dismiss, and granted in part and denied in part Defendants' motion to dismiss the Complaint.  Defendants moved for reconsideration of that portion of the Court's order that held Lead Plaintiff's claims were not time-barred.  Lead Plaintiff opposed the motion and on July 28, 2017, the Court denied Defendants' motion for reconsideration and request for interlocutory appeal.  Defendants answered the Complaint on July 11, 2017.

On January 22, 2018, Lead Plaintiff moved to certify the class.  Defendants took document and deposition discovery of Lead Plaintiff and filed their opposition to the motion on February 12, 2018, and Lead Plaintiff filed its reply on February 26, 2018.  On September 18, 2018, the Court granted in part Lead Plaintiff's motion with respect to its §§11 and 15 claims, and appointed Lead Plaintiff as Class Representative and Robbins Geller as Class Counsel.  The Court dismissed Lead Plaintiff's §12(a)(2) claim on standing grounds.  On October 2, 2018, Defendants filed a petition with the U.S. Court of Appeals for the Second Circuit to file an interlocutory appeal from the decision on the motion for class certification.  Lead Plaintiff filed an opposition to the motion on October 12, 2018, and it remained pending at the time the agreement in principle to settle the Litigation was reached.

1527400_5

The Settling Parties have conducted extensive fact and expert discovery, including depositions, the production and review of documents, and exchange of expert reports.

On October 10, 2018, the Defendants and Lead Plaintiff participated in an in-person mediation session with Michelle Yoshida, Esq., an experienced mediator.  The mediation was preceded by submission of mediation statements by the Settling Parties.  The Settling Parties engaged in arm's-length negotiations during the mediation session, but were unable to reach an agreement.  Following the mediation, the Settling Parties continued to pursue discovery activity while settlement discussions continued through Ms. Yoshida.  On January 17, 2019, the Settling Parties reached an agreement in principle to resolve the Litigation.  The agreement included, among other things, the Settling Parties' agreement to settle the Litigation in return for a cash payment of $17,000,000 for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.  This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement between the Settling Parties.

## II.     DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Defendants have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever.  Defendants expressly have denied, and continue to deny, that they have committed any act or omission giving rise to any liability under §§11, 12(a)(2) or 15 of the Securities Act of 1933.  Specifically, Defendants expressly have denied, and continue to deny, each and all of the claims alleged by Lead Plaintiff in the Litigation, including, without limitation, any liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation.  Defendants also have denied, and continue to deny, among other allegations, the allegations that Lead Plaintiff or the Class have suffered any damages, that the Registration Statement contained material misrepresentations or

omissions, or that Lead Plaintiff or the Class was harmed by the conduct alleged in the Litigation or that could have been alleged as part of the Litigation. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Litigation.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall in any event be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants are entering into this Stipulation solely to eliminate the burden and expense of further litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

### III.   LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Lead Plaintiff and Lead Counsel believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted therein. However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Lead Plaintiff and Lead Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and Lead Counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation. Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Class. Based on their evaluation, Lead Plaintiff and Lead Counsel have determined that the Settlement set forth in this Stipulation is in the best interests of Lead Plaintiff and the Class.

- 4 -

**IV.     TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for itself and the Class Members) and Defendants, by and through their counsel that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure in consideration of the benefits flowing to the parties from the Settlement, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

**1.      Definitions**

As used in this Stipulation the following terms, when capitalized, have the meanings specified below:

1.1     "Authorized Claimant" means any Class Member who submits a valid claim to the Claims Administrator that is accepted for payment.

1.2     "Claim(s)" means a paper claim submitted on a Proof of Claim and Release form or an electronic claim that is submitted to the Claims Administrator.

1.3     "Claims Administrator" means the firm of Gilardi & Co. LLC.

1.4     "Class" means all Persons who purchased or otherwise acquired, on or before August 5, 2015, Inovalon common stock.  Excluded from the Class are:  Defendants, the officers and directors of Inovalon during the Class Period, members of the immediate family of any Individual Defendant and the legal representatives, heirs, successors or assigns of any of the foregoing, as well as any entity in which Defendants have or had a controlling interest, provided, however, that any "Investment Vehicle" shall not be excluded from the Class.  Also excluded from the Class is any Class Member that validly and timely requests exclusion in accordance with the requirements set by the Court.

- 5 -

1527400_5

1.5      "Class Member" or "Member of the Class" mean a Person who falls within the definition of the Class as set forth in ¶1.4 above.

1.6      "Class Period" means the period from February 12, 2015 through August 5, 2015, inclusive.

1.7      "Defendants" means, collectively, Inovalon, the Individual Defendants and the Underwriter Defendants.

1.8      "Defendants' Counsel" means, collectively, the law firms of Skadden, Arps, Slate, Meagher & Flom LLP and DLA Piper LLP (US).

1.9      "Effective Date," or the date upon which this Settlement becomes "effective," means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred or have been waived.

1.10     "Escrow Agent" means the law firm of Robbins Geller Rudman & Dowd LLP or its successor(s).

1.11     "Final" means, with respect to any order or Judgment of the Court, that such order or Judgment represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review.  Without limitation, an order or Judgment becomes final when: (a) either no appeal therefrom has been filed and the time has passed for any notice of appeal to be timely filed therefrom; or (b) an appeal has been filed and either (i) the court of appeals has either affirmed the order or Judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (ii) a higher court has granted further appellate review and that court has either affirmed the underlying order or judgment or affirmed the court of appeals' decision affirming the Judgment or dismissing the appeal.  For purposes of this paragraph, an "appeal" shall include any motion for reconsideration or petition for a writ of

- 6 -

*certiorari* or other writ that may be filed in connection with approval or disapproval of this Settlement.  Any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to: (i) attorneys' fees, costs, or expenses, (ii) the Plan of Allocation (as submitted or subsequently modified), or (iii) the procedures for determining Authorized Claimants' recognized claims, shall not in any way delay, affect, or preclude the time set forth above for the Judgment to become Final, or otherwise preclude the Judgment from becoming Final.

  1.12 "Individual Defendants" means, collectively, Keith R. Dunleavy, Thomas R. Kloster, Denise K. Fletcher, André S. Hoffmann, Lee D. Roberts and William J. Teuber, Jr.

  1.13 "Investment Vehicle" means any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which Defendants, or any of them, have, has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but in which any defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest.

  1.14 "Inovalon Defendants" means, collectively, Inovalon and the Individual Defendants.

  1.15 "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B, as well as any form of final judgment that may be entered by the Court in a form other than the form attached hereto as Exhibit B and where none of the Settling Parties elects to terminate this Settlement by reason of such variance, consistent with the terms of this Stipulation.

  1.16 "Lead Counsel" means the law firm of Robbins Geller Rudman & Dowd LLP.

  1.17 "Lead Plaintiff" means Roofers Local No. 149 Pension Fund.

  1.18 "Lead Plaintiff's Counsel" means any attorney or firm who has appeared in the Litigation on behalf of Lead Plaintiff or the Class.

- 7 -

1.19    "Litigation" means the action captioned *Xiang v. Inovalon Holdings, Inc., et al.*, No. 1:16-cv-04923-VM-KNF pending in the United States District Court for the Southern District of New York.

1.20    "Net Settlement Fund" means the Settlement Fund less: (i) any Court-awarded attorneys' fees, expenses, and interest thereon; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.21    "Person(s)" means an individual, corporation (including all divisions and subsidiaries), limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, joint venture, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.22    "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of this Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.23    "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a Claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2, that a Class Member must complete and submit should that Class Member seek to share in a distribution of the Net Settlement Fund.

1.24    "Related Parties" means each Defendant's and former defendant's respective former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities and affiliates and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment

- 8 -

bankers, commercial bankers, entities providing fairness opinions, general or limited partners or partnerships, limited liability companies, members, joint ventures and insurers and reinsurers of each of them; and the predecessors, successors, assigns, estates, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

1.25    "Released Claims" means any and all claims, demands, losses, rights and causes of action of every nature and description, including both known claims and Unknown Claims, whether arising under federal, state, common, or foreign law, by Lead Plaintiff, any Class Member or their successors, assigns, executors, administrators, representatives, attorneys and agents, in their capacities as such, whether brought directly or indirectly against any of the Released Defendant Parties, that have been or could have been asserted in the Litigation or could in the future be asserted in any forum, whether foreign or domestic, and which arise out of or relate in any way, to (a) any of the allegations, transactions, events, disclosures, statements, acts or omissions that were asserted or could have been asserted by Lead Plaintiff or Class Members in this Litigation or in any other action or forum, and (b) arise out of, are based upon, or relate in any way to the purchase, acquisition, holding, sale or disposition of Inovalon common stock purchased or otherwise acquired by Class Members on or before August 5, 2015.  "Released Claims" does not include claims to enforce the Settlement.  "Released Claims" includes "Unknown Claims" as defined in ¶1.36 hereof.

1.26    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation, except for claims relating to the enforcement of the Settlement.

1.27    "Released Defendant Party" or "Released Defendant Parties" means Defendants, Defendants' Counsel, Piper Jaffray & Co., Robert W. Baird & Co. Incorporated, Wells Fargo Securities, LLC, and William Blair & Company, L.L.C., and their Related Parties.

1.28    "Releasing Plaintiff Party" or "Releasing Plaintiff Parties" means each and every plaintiff, Class Member, Lead Plaintiff, Lead Counsel, Lead Plaintiff's Counsel, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, representatives, affiliates, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Releasing Plaintiff Party who is an individual, as well as any trust of which any Releasing Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Releasing Plaintiff Parties do not include any Person who timely and validly seeks exclusion from the Class.

1.29    "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.30    "Settlement Amount" means Seventeen Million U.S. Dollars (U.S. $17,000,000.00) to be paid by check or wire transfer to the Escrow Agent pursuant to ¶2.2 of this Stipulation.

1.31    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.32    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.33    "Settling Parties" means, collectively, Defendants and Lead Plaintiff, on behalf of itself and the Class.

1.34    "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority, including, but not limited to, any local, state, and federal taxes.

- 10 -

1.35   "Underwriter Defendants" means, collectively, Goldman Sachs & Co., Morgan Stanley & Co. LLC, Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated and UBS Securities LLC.

1.36   "Unknown Claims" means (a) any and all Released Claims which the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Lead Plaintiff, the Class and Lead Counsel, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Lead Plaintiff, the Class and Lead Counsel.  With respect to (a) any and all Released Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against Lead Plaintiff, the Class and Lead Counsel, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542.  The Releasing Plaintiff Parties and Released Defendant Parties acknowledge that they

- 11 -

may hereafter discover facts in addition to or different from those which he, she, it or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but (a) the Releasing Plaintiff Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and each Releasing Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish and release, and each Released Defendant Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Defendant Claims against the Lead Plaintiff, the Class and Lead Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or

- 12 -

authorities.  The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for an is an essential element of the Settlement of which this release is a part.  Notwithstanding the foregoing, nothing in this Stipulation or its Exhibits shall be construed as limiting, modifying or otherwise affecting any insurance coverage or policies that may be available to any of the Released Defendant Parties.

### 2.  The Settlement

2.1    The obligations incurred pursuant to the Stipulation are: (a) subject to approval by the Court and the Judgment, reflecting such approval, becoming Final; and (b) in full and final disposition of the Litigation with respect to the Releasing Plaintiff Parties and Released Defendant Parties and any and all Released Claims and Released Defendants' Claims upon and subject to the terms and conditions set forth herein.

### a.  The Settlement Amount

2.2    In full and final settlement of the claims asserted in the Litigation against Defendants and in consideration of the releases specified in ¶4 herein, Inovalon and/or its insurance carriers, on behalf of all Defendants shall pay or shall cause the Settlement Amount to be paid by check or wire transfer on or before fifteen (15) business days after the later to occur of: (i) entry of the Preliminary Approval Order, and (ii) the Escrow Agent provides to Defendants' Counsel all information necessary to effectuate a transfer of funds to the Escrow Account including without limitation (a) wire transfer instructions (including bank name and ABA routing number, address, account name and number); (b) payment address; and (c) a complete and executed Form W-9 for the Settlement Fund that reflects a valid tax identification number.  The Escrow Agent shall deposit the Settlement Amount plus any accrued interest in a segregated escrow account (the "Escrow Account") maintained by the Escrow Agent.

1527400_5

2.3     If the entire Settlement Amount is not timely paid to the Escrow Agent, Lead Counsel may terminate the Settlement but only if:  (i) Lead Counsel has notified Defendants' Counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

2.4     Other than the obligation to pay or cause to be paid the Settlement Amount into the Settlement Fund set forth in ¶2.2 herein, the Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local returns.

2.5     Other than the obligation to cause the payment of the Settlement Amount in accordance with the terms of ¶2.2, Defendants shall have no obligation to make any other payments into the Escrow Account, to any Class Member or to Lead Plaintiff pursuant to the Stipulation.

### b.     The Escrow Agent

2.6     The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶2.2 hereof in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.  All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Defendant Parties shall have no responsibility for,

- 14 -

interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for the actions of the Escrow Agent.

2.7     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' Counsel.

2.8     Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for any transaction executed by the Escrow Agent.

2.9     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.10     Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants and/or order of the Court, reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Class by mail, publication, and other means, locating Class Members, assisting with the submission of Claims, processing Proof of Claim and Release forms, administering the Settlement, and paying escrow taxes, fees and costs, if any ("Notice and Administration Expenses") up to the sum of $400,000.00. Prior to the Effective Date, all such Notice and Administration Expenses in excess of $400,000.00 shall be paid from the Settlement

- 15 -

Fund subject to prior approval of the Court.  After the Effective Date, Notice and Administration Expenses may be paid as incurred, without approval of Defendants or further order of the Court.

2.11    It shall be Lead Counsel's responsibility to disseminate the Notice, Proof of Claim and Release, and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court.  The Released Defendant Parties shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.  The Escrow Agent through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for any Notice and Administration Expenses.

### c.    Taxes

2.12    (a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1, and the regulations promulgated thereunder.  The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1).  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.12, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. §1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg.

§1.468B-2(k)).  Such returns (as well as the elections described in ¶2.12(a) hereof) shall be consistent with this ¶2.12 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.12(c) hereof.

(c)     All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Defendant Parties or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶2.12 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.12) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Defendant Parties and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses.  The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Defendant Parties and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Defendant Parties nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.12.

- 17 -

2.13   This is not a claims-made settlement.  As of the Effective Date, the Released Defendant Parties, and/or any other Person funding the Settlement on their behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason, and shall not have liability should Claims made exceed the amount available in the Settlement Fund for payment of such Claims.  The Released Defendant Parties shall not be liable for the loss of any portion of the Settlement Fund, nor have any liability, obligation, or responsibility for the payment of Claims, Taxes, legal fees, or any other expenses payable from the Settlement Fund.

### d.   Termination of Settlement

2.14   In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶2.10 and 2.12 hereof in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from Defendants' Counsel in accordance with ¶7.6 herein.

### 3.   Preliminary Approval Order and Settlement Hearing

3.1   Immediately following execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation and approval for the mailing of a settlement notice (the "Notice") and publication of a summary notice ("Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶6.1 hereof, and the date of the Settlement Hearing as defined below.  Upon exhaustion of the Settlement Fund, the

- 18 -

Claims Administrator will within five (5) business days thereafter take down, deactivate or otherwise delete any domain established for purposes of publicizing or administering the Settlement.

3.2     Inovalon shall provide the Claims Administrator, at no cost to Lead Plaintiff or the Class, reasonably available transfer records in electronic searchable form, such as Excel, containing the names and addresses of registered owners of Inovalon common stock on or prior to August 5, 2015.  It shall be solely Lead Counsel's responsibility to disseminate the Notice and Summary Notice to the Class in accordance with this Stipulation and as ordered by the Court.  Class Members shall have no recourse as to the Released Defendant Parties with respect to any claims they may have that arise from any failure of the notice process.

3.3     Lead Counsel shall request that, after notice is given and not earlier than ninety (90) calendar days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715 *et seq.* ("CAFA") as set forth in ¶3.4 below, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein.  At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.4     Inovalon shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve or cause to be served proper notice of the proposed Settlement  upon those who are entitled to receive notice pursuant to CAFA.  Inovalon is solely responsible for the costs of the CAFA notice and administering the CAFA notice.

**4.     Releases**

4.1     Upon the Effective Date, as defined in ¶1.9 hereof, Lead Plaintiff shall, and each and every Releasing Plaintiff Party shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Defendant Parties and

- 19 -

shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Defendant Parties, whether or not such Releasing Plaintiff Party executes and delivers the Proof of Claim and Release or shares in the Net Settlement Fund.  Claims to enforce the terms of this Stipulation are not released.

4.2    Any Proof of Claim and Release that is executed by Class Members shall release all Released Claims against the Released Defendant Parties and shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3    Upon the Effective Date, the Releasing Plaintiff Parties will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Defendant Parties.

4.4    Upon the Effective Date, each of the Released Defendant Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against Lead Plaintiff, the Class and Lead Counsel. Claims to enforce the terms of this Stipulation are not released.  Notwithstanding the foregoing, nothing in this Stipulation or its Exhibits shall be construed as limiting, modifying or otherwise affecting any insurance coverage or policies that may be available to any of the Released Defendant Parties.

5.    **Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

5.1    The Claims Administrator, subject to such supervision and direction of Lead Counsel and the Court as may be necessary or as circumstances may require, shall administer and calculate the Claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.  Other than Inovalon's obligation to provide its securities holders' records as provided in ¶3.2 above, the Released Defendant Parties and Defendants' Counsel shall have no responsibility for or interest in whatsoever with respect to the administration of the Settlement or the

- 20 -

actions or decisions of the Claims Administrator, and shall have no liability whatsoever to the Releasing Plaintiff Parties, including Lead Plaintiff, any other Class Members, or Lead Counsel, in connection with such administration, including, but not limited to: (i) any act, omission, or determination by Lead Counsel, the Escrow Agent, and/or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management or investment of the Settlement Fund or the Net Settlement Fund, or the distribution of the Net Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment of any Claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

5.2     The Settlement Fund shall be applied as follows:

(a)     to pay all Notice and Administration Expenses;

(b)     to pay the Taxes and Tax Expenses;

(c)     to pay attorneys' fees and expenses of Lead Plaintiff's Counsel and reimbursement of Lead Plaintiff's costs and expenses (the "Fee and Expense Award"), and to pay any award to Lead Plaintiff for its reasonable costs and expenses (including lost wages) pursuant to 15 U.S.C. §77z-1(a)(4), if and to the extent allowed by the Court; and

(d)     after the Effective Date, to distribute the Net Settlement Fund to Authorized Claimants as provided by this Stipulation, the Plan of Allocation, or the orders of the Court.

5.3     After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.4     Within one hundred-twenty (120) calendar days after the mailing of the Notice or such other time as may be set by the Court, each Class Member shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit

- 21 -

A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

5.5     Except as otherwise ordered by the Court, all Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released Defendant Parties concerning the Released Claims.  Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted Claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby.  No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator or any Class Member by reason of the exercise or non-exercise of such discretion.

5.6     Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to ¶5.8 below.

5.7     Proof of Claim and Release forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted.  The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose Claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose Claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶5.8 below.

5.8     If any claimant whose timely Claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶5.7 above, or a lesser period of time if the Claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.9     Each claimant who declines to be excluded from the Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's Claim, including, but not limited to, all releases provided for herein and in the Judgment, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Class Member and the validity and amount of the claimant's Claim.  In connection with processing the Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.  All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment.  All Class Members, other claimants, and parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

5.10    Following the Effective Date, the Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent in the initial distribution and who would receive a

- 23 -

minimum of $10.00. These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis*. Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel and approved by the Court.

5.11   The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claim of any kind against the Released Defendant Parties with respect to the matters set forth in ¶¶5.1-5.13 hereof; and the Releasing Plaintiff Parties release the Released Defendant Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.12   No Person shall have any claim against the Released Defendant Parties, Lead Plaintiff, Lead Plaintiff's Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.13   It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's Claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set forth herein, or any other orders entered pursuant to the Stipulation.

**6.      Lead Plaintiff's Counsel's Attorneys' Fees and Expenses**

6.1      Lead Counsel may submit an application or applications (the "Fee and Expense Application") from the Settlement Fund for:  (a) an award of attorneys' fees; plus (b) expenses or charges in connection with prosecuting the Litigation; plus (c) any interest earned on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court.  An application for fees and expenses may include a request for reimbursement of Lead Plaintiff's reasonable costs and expenses in connection with its representation of the Class pursuant to 15 U.S.C. §77z-1(a)(4).  Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2      The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.  Lead Counsel may thereafter allocate the attorneys' fees among Lead Plaintiff's Counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3      In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel, including its partners and/or shareholders, and such other Lead Plaintiff's Counsel, including their law firms, partners, and/or shareholders, and Lead Plaintiff who have received any portion of the Fee and Expense Award shall, within five (5) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned by the Settlement Fund in an amount consistent with

- 25 -

such reversal, modification, cancellation or termination.  Any refunds required pursuant to ¶6.3 shall be the several obligation of Lead Plaintiff's Counsel, including their law firms, partners, and/or shareholders, and Lead Plaintiff that received fees or expenses to make appropriate refunds or repayments to the Settlement Fund.  Each such Lead Plaintiff's Counsel or Lead Plaintiff receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that (a) such Person and its partners, shareholders, and/or members are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and (b) are severally liable for the full amount of all fees, expenses, and costs paid from the Settlement Fund.  Without limitation, Lead Plaintiff's Counsel and Lead Plaintiff and their partners, shareholders, and/or members agree that the Court may, upon application of Defendants and notice to Lead Counsel and Lead Plaintiff's Counsel, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, should such law firms or their partners, shareholders, or members fail to timely repay fees and expenses pursuant to this paragraph.

6.4     The procedure for and the allowance or disallowance by the Court of any applications by any Lead Plaintiff's Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and shall have no effect on the terms of the Stipulation or on the validity or enforceability of this Settlement.  The approval of the Settlement, and it becoming Final, shall not be contingent on the award of attorneys' fees and expenses, any award to Lead Plaintiff, Lead Counsel, or Lead Plaintiff's Counsel, nor any appeals from such awards.  Any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

- 26 -

6.5     Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  With the sole exception of Defendants' obligation to pay or cause the Settlement Amount to be paid into the Escrow Account as provided for in ¶2.2, the Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Lead Plaintiff's Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

6.6     The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Plaintiff's Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

6.7     The Released Defendant Parties shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses (including Taxes) incurred by or on behalf of any Class Member, whether or not paid from the Escrow Account.

**7.      Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

7.1     The Effective Date of the Settlement shall be conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order directing notice to the Class, as required by ¶3.1 hereof;

(b)     the Settlement Amount has been deposited into the Escrow Account;

(c)     Defendants have not exercised their option to terminate the Stipulation pursuant to ¶7.3 hereof;

(d)     the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

(e)     the Judgment has become Final, as defined in ¶1.11 hereof.

7.2     Upon the Effective Date, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If the conditions

- 27 -

specified in ¶7.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶7.6, 7.7 and 7.8 hereof unless Lead Counsel and counsel for the Defendants mutually agree in writing to proceed with the Settlement.

7.3      Defendants shall have the right to terminate the Settlement and render it null and void in the event that Class Members who purchased or otherwise acquired more than a certain percentage of Inovalon common stock subject to this Settlement exclude themselves from the Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Lead Plaintiff and Defendants, by and through their counsel.  The Settling Parties agree to maintain the confidentiality of the Supplemental Agreement, which is being executed concurrently herewith.  The Supplemental Agreement shall not be filed with the Court unless and until: the Court requires the Settling Parties to file the Supplemental Agreement or disclose its terms.  If submission of the Supplemental Agreement is ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal, but such disclosure shall be carried out to the fullest extent possible in accordance with the practices of the Court so as to preserve the confidentiality of the Supplemental Agreement, particularly the threshold aggregate number of shares.  Notwithstanding the foregoing, Defendants may include a redacted copy of the Supplemental Agreement with any notice provided pursuant to CAFA.

7.4      Each of Lead Plaintiff and Defendants shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) calendar days of:  (a) the Court's refusal to enter the Preliminary Approval Order; (b) the Court's refusal to approve this Stipulation; (c) the Court's refusal to enter the Judgment; (d) the date upon which the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked; or (e) the failure of the Effective Date to occur for any reason.  For avoidance of doubt, no order of the Court or

- 28 -

modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorney's fees, expenses, and interest awarded by the Court to Lead Counsel or expenses to Lead Plaintiff shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of the Stipulation.

7.5     If, before the Settlement becomes Final, Inovalon files for protection under the Bankruptcy Code, or any similar law, or a trustee, receiver, conservator, or other fiduciary is appointed under bankruptcy, or any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money or any portion thereof to the Escrow Agent by Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the United States Code (Bankruptcy) or applicable state law and any portion thereof is required to be returned to Defendants out of the Escrow Account, and such amount is not promptly placed in the Escrow Account by others, then, at the election of Lead Plaintiff, the Settling Parties shall jointly move the Court to vacate and set aside the Judgment, including the releases pursuant thereto, and the Settlement and this Stipulation shall terminate, and the Settling Parties shall be restored to their respective positions in the Litigation as of January 17, 2019.

7.6     Unless otherwise ordered by the Court, in the event this Stipulation is not approved or this Stipulation or the Settlement is terminated, or canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or altered following any appeal taken therefrom, or is successfully collaterally attacked, within ten (10) business days after written notification of such event is sent by Defendants' Counsel or Lead Counsel to the Escrow Agent, the Settlement Fund, less Taxes, Tax Expenses and Notice and Administration Expenses which have either been disbursed pursuant to ¶¶2.10 and/or 2.12 hereof, or are chargeable to the Settlement Fund pursuant to ¶¶2.10 and/or 2.12 hereof, shall be refunded by the Escrow Agent to the Persons who contributed to the Settlement Fund in proportion to their respective contribution.  Such refunds shall be pursuant to written instructions from Defendants' Counsel.  The Escrow Agent or its designee shall apply for any tax refund owed on the Settlement

Amount and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund to the same Persons in the same manner as the Settlement Fund described in this ¶7.6.  Such payments shall be pursuant to written instructions from Defendants' Counsel.

7.7     In the event that this Stipulation is not approved or this Stipulation or the Settlement is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, the Settling Parties shall be restored to their respective positions in the Litigation as of January 17, 2019.  In such event, the terms and provisions of the Stipulation, with the exception of ¶¶1.1-1.36, 2.8-2.10, 2.12-2.14, 6.3-6.4, 7.4-7.7, and 9.6 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or any Fee and Expense Award shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

7.8     If the Effective Date does not occur, or if this Stipulation is terminated pursuant to its terms, neither Lead Plaintiff nor Lead Plaintiff's Counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶2.10 or 2.12.  In addition, any amounts already incurred pursuant to ¶¶2.10 or 2.12 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of this Stipulation prior to the balance being refunded in accordance with ¶¶2.14 and 7.6 hereof.

**8.     No Admission of Wrongdoing**

8.1     Neither the Settlement, this Stipulation (whether or not consummated), including the Exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation and the Settlement, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

- 30 -

(a)      shall be offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any allegations by Lead Plaintiff or any Member of the Class or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation or in any other litigation, including, but not limited to, litigation of the Released Claims, or of any liability, negligence, fault, or wrongdoing of any kind of any of the Defendants or in any way referred to for any other reason as against any of the Defendants, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)      shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any fault, misrepresentations, or omission with respect to any statement or written document approved or made by any Defendant, or against Lead Plaintiff or any Member of the Class as evidence of any infirmity in the claims of Lead Plaintiff and the Class;

(c)      shall be offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding; provided, however, that if this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(d)      shall be construed against Defendants, Lead Plaintiff, or the Class as evidence of a presumption, concession or admission that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial or in any proceeding other than this Settlement.

### 9.      Miscellaneous Provisions

9.1      The Settling Parties:  (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement

all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

9.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.3     The Settling Parties and their counsel agree not to assert in any statement made to any media representative (whether or not for attribution) that the Litigation was commenced or prosecuted by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis, nor will they deny that the Litigation was commenced and prosecuted and defended in good faith and is being settled voluntarily after consultation with competent legal counsel.  In all events, Settling Parties and their counsel shall not make any accusations of wrongful or actionable conduct by any party concerning the prosecution, defenses and resolution of the Litigation, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.4     Defendants and/or the Released Defendant Parties may file this Stipulation and/or the Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good faith settlement, judgment bar or reduction, or any theory of

- 32 -

claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection under any applicable insurance policy.  The Settling Parties may file this Stipulation and/or the Judgment in any action that may be brought to enforce the terms of this Stipulation and/or Judgment.  All Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

9.5     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.6     All of the Exhibits to this Stipulation and the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

9.7     This Stipulation, along with its Exhibits and the Supplemental Agreement, may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.8     This Stipulation and the Exhibits attached hereto together with the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.  No representations, warranties, or inducements have been made to any party concerning this Stipulation, its Exhibits, or the Supplemental Agreement, other than the representations, warranties, and covenants contained and memorialized in such documents.

9.9     Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

9.10     Lead Counsel, on behalf of the Class, is expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Class which it deems appropriate.

9.11     Each counsel or other Person executing this Stipulation, its Exhibits, the Supplemental Agreement, or any related Settlement document, on behalf of any party hereto hereby warrants that such Person has the full authority to do so, and that they have the authority to take

- 33 -

appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms, without requiring additional consent, approval, or authorization of any other Person, board, entity, tribunal, or other regulatory or governmental authority.

9.12    This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  Signatures sent by facsimile or pdf'd via e-mail shall be deemed originals.

9.13    All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (i) when delivered personally to the recipient, (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) seven (7) business days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

### *If to Lead Plaintiff or to Lead Counsel:*

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101

### *If to the Inovalon Defendants or to the Inovalon Defendants' Counsel:*

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
SUSAN L. SALTZSTEIN
JAMES R. CARROLL
Four Times Square
New York, NY 10036

### *If to the Underwriter Defendants or to the Underwriter Defendants' Counsel:*

DLA PIPER LLP (US)
JOHN J. CLARKE, JR.
1251 Avenue of the Americas
New York, NY 10020

1527400_5

9.13    This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

9.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters related to the Settlement.

9.15    The waiver by one Settling Party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other Settling Party or a waiver of any other prior or subsequent breach of this Stipulation.

9.16    Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Defendant Parties.

9.17    This Stipulation, its Exhibits and the Supplemental Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of New York without giving effect to its choice-of-law principles, except to the extent that federal law requires that federal law govern.

9.18    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.19    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the

- 35 -

Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

9.20    Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

9.21    Unless otherwise provided, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation without further order of the Court.

- 36 -

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated February 19, 2019.

ROBBINS GELLER RUDMAN
& DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
JOHN H. GEORGE

SHAWN A. WILLIAMS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
jgeorge@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Lead Plaintiff

1527400_5

SULLIVAN, WARD, ASHER & PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI 48075-1000
Telephone: 248/746-0700
248/746-2760 (fax)

Additional Counsel for Lead Plaintiff

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
SUSAN L. SALTZSTEIN
JAMES R. CARROLL

*Susan L. Saltzstein*
SUSAN L. SALTZSTEIN

Four Times Square
New York, NY 10036

Attorneys for Inovalon Holdings, Inc. and the
Individual Defendants

DLA PIPER LLP (US)
JOHN J. CLARKE, JR.


JOHN J. CLARKE, JR.

1251 Avenue of the Americas
New York, NY 10020

Attorneys for Underwriter Defendants

- 38 -

SULLIVAN, WARD, ASHER & PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

Additional Counsel for Lead Plaintiff


SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
SUSAN L. SALTZSTEIN
JAMES R. CARROLL

SUSAN L. SALTZSTEIN

Four Times Square
New York, NY 10036

Attorneys for Inovalon Holdings, Inc. and the
Individual Defendants

DLA PIPER LLP (US)
JOHN J. CLARKE, JR.

JOHN J. CLARKE, JR.

1251 Avenue of the Americas
New York, NY 10020

Attorneys for Underwriter Defendants

- 38 -

## CERTIFICATE OF SERVICE

I, Daniel J. Pfefferbaum, hereby certify that on March 6, 2019, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice. I further certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 6, 2019, at San Francisco, California.



s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM